UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| John Fralish, *on behalf of himself and others similarly situated*, | Civil Action No.: 3:20-cv-00353 |
| Plaintiff, | Jury Trial Demanded |
| v. | |
| Deliver Technology, LLC and Fluent Inc., | |
| Defendants. | |

**CLASS ACTION COMPLAINT**

**Nature of this Action**

1.  John Fralish ("Plaintiff") brings this class action lawsuit against Deliver Technology, LLC ("Deliver Technology") and Fluent, Inc. ("Fluent") (together, "Defendants") under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

2.  Upon information and good faith belief, Deliver Technology, on behalf of, for the benefit of, and at the direction of, Fluent, routinely and systematically violates 47 C.F.R. § 64.1200(c) and, in turn, 47 U.S.C. § 227(c)(5), by delivering more than one advertisement or marketing text message to residential or cellular telephone numbers registered with the National Do-Not-Call Registry ("DNC Registry") without the prior express invitation or permission required by the TCPA.

**Jurisdiction and Venue**

3.  This Court has subject matter jurisdiction under 47 U.S.C. § 227(c)(5) and 28 U.S.C. § 1331.

4.  Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b) as a substantial

1

portion of the events giving rise to this action occurred in this district. In particular, Defendants directed their text messages to Plaintiff's telephone in this district, and Plaintiff received Defendants' text messages in this district.

## Parties

5. Plaintiff is a natural person who at all relevant times resided in Mischawaka, Indiana.

6. Fluent is an advertising and marketing corporation headquartered in New York, New York and incorporated in Delaware.

7. Deliver Technology is a limited liability company registered in Delaware.

8. Deliver Technology operates advertising and affiliate marketing websites.

9. Deliver Technology is a wholly-owned subsidiary of Fluent.[1]

## Factual Allegations

10. Plaintiff is, and has been at all times relevant to this action, the regular and sole user of his cellular telephone number—(312)-283-XXXX.

11. Plaintiff uses his cellular telephone as his personal residential telephone number.

12. In 2003, the Federal Communications Commission ("FCC") ruled that cellular telephone numbers that are placed on the DNC registry are presumed to be residential. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003).

13. Plaintiff registered his cellular telephone number with the DNC Registry in or around May 2019.

---

[1] *See, e.g.*, https://sec.report/Document/0001437749-19-023207/ (describing Deliver Technology as a "Subsidiary Guarantor" of Fluent) (last visited April 7, 2020).

14. On February 21 and 22, 2020, Plaintiff received the following text messages from a 95319 short code on his cellular telephone:



15. Plaintiff received similar text messages from short code 95319 on February 23, 25, 27, and 28, 2020, and March 1, 6, 11, and 25, 2020, for a total of at least 11 text messages.

16. On March 18 and 19, 2020, Plaintiff received the following text messages from a 62178 short code on his cellular telephone:



17. Plaintiff received similar text messages from short code 62178 on March 20, 21, 22, 23, 24, 2020 and April 7, 8, 9, 10, and 11, 2020, for a total of at least 15 text messages.

18. On March 20, 2020, Plaintiff received the following text messages from short code 83516 on his cellular telephone:



19. Plaintiff received similar text messages from short code 83516 on March 21, 22, 24, 27, and 29, 2020, and April 3, and 8, 2020, for a total of at least 9 text messages.

20. The 95319 short code is a dedicated, vanity short code, owned by "M360 Alerts."[2]

21. The 83516 short code is a dedicated, vanity short code, owned by "Ytel."[3]

22. The 62178 short code is a dedicated, vanity short code, owned by "SimplyGigs."[4]

23. "A short code is a number with fewer digits than a phone number to which a text message can be sent. The five-or six-digit numbers are often promoted in traditional and digital

---

[2] *See* https://help.dialpad.com/hc/en-us/articles/115000367103-Short-Codes (last visited April 7, 2020).

[3] *Id.*

[4] *Id.*

advertising. Companies use these codes to bring customers into the branded experience through voting, surveys, sweepstakes, coupon offers, information updates, loyalty programs and alerts."[5]

24.     "A dedicated short code is an SMS short code that is used and paid for exclusively by one brand. A dedicated short code is different from a shared short code, because a shared short code is used and paid for by multiple brands."[6]

25.     "A vanity short code, is a 5-6 digit phone number that is specifically selected by a brand, rather than selected at random by the Common Short Code Administration (CSCA)."[7]

26.     Fluent has a licensing agreement with Ytel, Inc. ("Ytel") for the use of its short code software.[8]

27.     Ytel is a is technology services company based in Lake Forest, California.

28.     Ytel designs, develops, and implements various telephony application programming interfaces ("APIs").[9]

29.     Among Ytel's product offerings is its SMS API, which includes the following features:

- Outbound SMS: "Send outgoing messages to increase sales, engagement, and brand visibility."

---

[5]     https://usshortcodes.com/faqs (last visited September 9, 2019).

[6]     https://usshortcodedirectory.com/faq/what-is-a-dedicated-short-code/ (last visited September 9, 2019).

[7]     https://usshortcodedirectory.com/faq/what-is-a-vanity-short-code/ (last visited September 9, 2019).

[8]     *See, e.g.*, https://www.sec.gov/Archives/edgar/data/1460329/000119312518097889/d558991dex102.htm (last visited April 7, 2020).

[9]     https://www.ytel.com/products (last visited April 7, 2020).

- Short Code Messages: "Send and receive high throughput and volume SMS using a shortcode anywhere in the nation."

- A2P Messages: "Send high volume, event-based SMS within your software with reliable deliverability and flexible scaling."[10]

30. Ytel also offers an all-in-one package, dubbed its "Contact Center," which describes its ability to "[a]utomatically nurture leads by scheduling voicemails, emails, and text messages to get sent based on the disposition of your leads."[11]

31. Some of the links in the text messages delivered by 83516 redirect to the website usarewardspot.com, a "Flash Rewards" website operated by Deliver Technology.[12]

32. Some of the links in the text messages delivered by 95139 redirect to the website thejobspotter.com, a website also affiliated with Deliver Technology.[13]

33. The links in the text messages delivered by short code 62178 redirect to the website myjobmobile.com.

34. Upon information and good faith belief, and in light of the timing, content, and context of the text messages and website links associated with short code 62178, myjobmobile.com is also affiliated with Defendants.

35. Plaintiff did not give Defendants prior express consent or prior express written consent to send text messages to his cellular telephone number.

36. Plaintiff is not named Shaniko and does not know anyone named Shaniko.

---

[10]   *Id.*

[11]   *Id.*

[12]   *See, e.g.*, https://contact.flashrewards.us/policies/terms (applying Deliver Technology terms and conditions to website users) (last visited April 7, 2020).

[13]   *See, e.g.*, http://contact.thejobspotter.com/policies/privacy (applying Deliver Technology privacy agreements to website users) (last visited April 7, 2020).

37. On March 9, 2020, Plaintiff mailed a letter to Deliver Technology's registered agent alerting it that he did not consent to receive any advertising or telemarketing text messages. *See* Exhibit A.

38. Plaintiff mailed a letter, as opposed to responding by text message, because—based on his prior experience with other unwanted text messages—he was uncertain if responding to those text messages would have any effect, and was concerned that responding would result in even more text messages being delivered to his cellular telephone number.

39. Plaintiff also relied on guidance from the FCC, which advises that consumers that wish to avoid unwanted texts should "not respond to unwanted texts from questionable sources."[14]

40. However, Plaintiff continued to receive text messages from short codes 95319, 83516, and 62178 promoting Defendants' goods and services after Deliver Technology received Plaintiff's letter.

41. Deliver Technology did not respond to Plaintiff's letter.

42. Upon information and good faith belief, Deliver Technology sent the text messages at issue on behalf of, for the benefit of, and at the direction of, Fluent.

43. Upon information and good faith belief, Deliver Technology's operations are controlled by Fluent.

44. Upon information and good faith belief, Fluent authorized Deliver Technology to send the text messages at issue.

45. Upon information and good faith belief, Fluent ratified Deliver Technology's transmission of the text messages at issue by knowingly accepting the benefits of Deliver Technology's conduct.

---

[14] https://www.fcc.gov/consumers/guides/stop-unwanted-robocalls-and-texts (last visited April 10, 2020).

46. Upon information and good faith belief, and in light of the nature and character of the text messages at issue—standardized, impersonal, and consistent in structure and format—as well as Ytel's public statements regarding its APIs' abilities to communicate "automatically" and with "high volume," the advertisement and marketing text messages at issue were sent by using an automatic telephone dialing system.

47. The text messages at issue were sent for non-emergency purposes.

48. Upon information and good faith belief, the text messages at issue were sent voluntarily.

49. The purpose of the text messages at issue was to advertise and to market Defendants' businesses.

50. Plaintiff did not give Defendants prior express invitation or permission to send advertisement or marketing text messages to his cellular telephone number.

51. Plaintiff suffered actual harm as a result of the text messages at issue in that he suffered an invasion of privacy, an intrusion into his life, and a private nuisance.

52. Upon information and good faith belief, Defendants use an automatic telephone dialing system to send text messages, absent prior express consent or prior express written consent, to telephone numbers assigned to a cellular telephone service.

53. Upon information and good faith belief, Defendants knew, or should have known, that Plaintiff registered his cellular telephone number with the DNC Registry.

**Class Action Allegations**

54. Plaintiff brings this action under Federal Rule of Civil Procedure 23, and as a representative of the following class:

> All persons throughout the United States (1) to whom Deliver Technology, LLC or Fluent, Inc. delivered, or caused to be delivered, more than one telephone call or

text message within a 12-month period, promoting Deliver Technology, LLC's or Fluent, Inc.'s goods or services, (2) where the person's residential or cellular telephone number had been registered with the National Do Not Call Registry for at least thirty days before Deliver Technology, LLC or Fluent, Inc. delivered, or caused to be delivered, at least two of the telephone calls or text messages within the 12-month period, (3) within four years preceding the date of this complaint through the date of class certification.

55. Excluded from the class is Defendants, their officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which either defendant has or had a controlling interest.

56. Upon information and belief, the members of the class are so numerous that joinder of all of them is impracticable.

57. The exact number of members of the class is unknown to Plaintiff at this time, and can be determined only through appropriate discovery.

58. The members of the class are ascertainable because the class is defined by reference to objective criteria.

59. In addition, the members of the class are identifiable in that, upon information and belief, their cellular telephone numbers, names, and addresses can be identified in business records maintained by Defendants, and by third parties.

60. Plaintiff's claims are typical of the claims of the members of the class.

61. As it did for all members of the class, Defendants delivered solicitation text messages to Plaintiff's telephone number more than thirty days after Plaintiff registered his cellular telephone number with the DNC Registry.

62. Plaintiff's claims, and the claims of the members of the class, originate from the same conduct, practice, and procedure on the part of Defendants.

63. Plaintiff's claims are based on the same theories as are the claims of the members

of the class.

64. Plaintiff suffered the same injuries as the members of the class.

65. Plaintiff will fairly and adequately protect the interests of the members of the class.

66. Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the class.

67. Plaintiff will vigorously pursue the claims of the members of the class.

68. Plaintiff has retained counsel experienced and competent in class action litigation.

69. Plaintiff's counsel will vigorously pursue this matter.

70. Plaintiff's counsel will assert, protect, and otherwise represent the members of the class.

71. The questions of law and fact common to the members of the class predominate over questions that may affect individual members of the class.

72. Issues of law and fact common to all members of the class are:

   a. Defendants' conduct, pattern, and practice as it pertains to delivering advertisement and telemarketing text messages;

   b. Defendants' practice of delivering text messages, for solicitation purposes, to telephone numbers already registered on the DNC Registry for more than thirty days;

   c. Whether Deliver Technology and Fluent had an agency-principal relationship concerning their conduct, pattern, and practice as it pertains to delivering text messages;

   d. Whether Fluent ratified Deliver Technology's delivery of the text messages at issue;

    e. Whether Deliver Technology delivered text messages at the direction of Fluent;

    f. Defendants' violations of the TCPA; and

    g. The availability of statutory penalties.

73. A class action is superior to all other available methods for the fair and efficient adjudication of this matter.

74. If brought and prosecuted individually, the claims of the members of the class would require proof of the same material and substantive facts.

75. The pursuit of separate actions by individual members of the class would, as a practical matter, be dispositive of the interests of other members of the class, and could substantially impair or impede their ability to protect their interests.

76. The pursuit of separate actions by individual members of the class could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendants.

77. These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the class.

78. The damages suffered by the individual member of the class may be relatively small, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the class to redress the wrongs done to them.

79. The pursuit of Plaintiff's claims, and the claims of the members of the class, in one forum will achieve efficiency and promote judicial economy.

80. There will be no extraordinary difficulty in the management of this action as a class action.

81. Defendants acted or refused to act on grounds generally applicable to the members of the class, making final declaratory or injunctive relief appropriate.

## Count I
## Violation of 47 U.S.C. § 227(c)(5)

82. Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-81.

83. A text message is a "call" as defined by the TCPA. *See, e.g.*, *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 280 n.4 (2d Cir. 2020) ("It is undisputed that '[a] text message to a cellular telephone . . . qualifies as a 'call' within the compass of [the TCPA].'") (internal citation omitted); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

84. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

85. Section 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

86. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of those regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

87. Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the class members who

registered their respective cellular or residential telephone numbers with the DNC Registry, which is a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

88. Defendants violated 47 U.S.C. § 227(c)(5) because they delivered, or caused to be delivered, to Plaintiff and members of the class, more than one solicitation call or text message in a 12-month period in violation of 47 C.F.R. § 64.1200.

89. As a result of Defendants' violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200, Plaintiff, and the members of the class, are entitled to damages in an amount to be proven at trial.

## Prayer for Relief

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a) Determining that this action is a proper class action;

b) Designating Plaintiff as a class representative of the class under Federal Rule of Civil Procedure 23;

c) Designating Plaintiff's counsel as class counsel under Federal Rule of Civil Procedure 23;

d) Adjudging and declaring that Defendants violated 47 U.S.C. § 227(c)(5);

e) Enjoining Defendants from continuing their violative behavior, including continuing to deliver solicitation text messages to telephone numbers registered with the DNC Registry for at least thirty days;

f) Awarding Plaintiff and the members of the class damages under 47 U.S.C. § 227(c)(5)(B);

g) Awarding Plaintiff and the members of the class treble damages under 47 U.S.C. § 227(c)(5)(C);

h) Awarding Plaintiff and the class reasonable attorneys' fees, costs, and expenses under Rule 23 of the Federal Rules of Civil Procedure;

i) Awarding Plaintiff and the members of the class any pre-judgment and post-judgment interest as may be allowed under the law; and

j) Awarding such other and further relief as the Court may deem just and proper.

## Demand for Jury Trial

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

Date: May 4, 2020

*/s/ Michael L. Greenwald*
Michael L. Greenwald
Greenwald Davidson Radbil PLLC
7601 N. Federal Highway, Suite A-230
Boca Raton, Florida 33487
Phone: (561) 826-5477
mgreenwald@gdrlawfirm.com

*Counsel for Plaintiff and the proposed class*