## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

JOHN FRALISH, *on behalf of himself and others similarly situated*,

       Plaintiff,

       v.

DELIVER TECHNOLOGY, LLC, *et al.*,

       Defendant.

CASE NO. 3:20-CV-00353-DRL-MGG

## OPINION AND ORDER

Pending and ripe before the Court is Plaintiff's Motion to Compel Production of Documents, Answers to Interrogatories, and Responses to Requests for Admission filed on December 11, 2020. For the reasons discussed below, Plaintiff's Motion to Compel is granted in part and denied in part.

## I.   RELEVANT BACKGROUND

On approximately May 23, 2019, Plaintiff registered his cell phone number with the Federal Do Not Call ("DNC") registry. [DE 14 at 3]. From February 21, 2020, to April 11, 2020, Plaintiff received a total of 35 text messages from short code numbers[1] 95319, 62178, and 83516 directed to someone named "Shaniko," a name with which Plaintiff has no association. [DE 14 at 3–5, 7]. Short code 95319 is assigned the vanity short code "M360 Alerts," short code 62178 is assigned the vanity short code "SimplyGigs," and

---

[1] *Frequently Asked* Questions, SHORT CODE REGISTRY, https://www.usshortcodes.com/learn-more/faq ("A short code is a five- or six-digit number that can be used to send and receive text messages.")

short code 83516 is assigned the vanity short code "Ytel." [*Id.* at 5]. Ytel is a technology services company that develops and implements telephony applicant programming interfaces ("APIs") [DE 14 at 6]. Some of the links in messages delivered by short codes 83516 and 95139 redirect to websites operated by Defendant Deliver Technology, LLC ("Deliver"). [DE 14 at 7]. Deliver is a subsidiary of Defendant Fluent Inc. ("Fluent") and its operations are controlled by it. [DE 24-1 at 2; DE 18 at 12]. Fluent has contracted for the use of short codes that are used to send text messages to users in support of its business operations and uses short codes 95319 and 83516 for this purpose. [DE 24-1 at 2]. Additionally, Plaintiff believes that links associated with short code 62178 are also affiliated with Defendants. [DE 14 at 7]. Plaintiff did not give prior express consent for Defendants to send text messages to his cell phone number. [DE 14 at 7].

On March 9, 2020, Plaintiff sent a letter via certified mail to Deliver's registered agent, notifying them that he did not consent to receive telemarketing text messages. [DE 14 at 8]. Despite this letter, Plaintiff continued to receive text messages from all three short codes after Defendant had received Plaintiff's letter. Plaintiff never received a response from Defendant. [DE 14 at 8]. Following the receipt of text messages, Plaintiff filed the instant class action lawsuit on behalf of himself and members of his class in this Court on May 4, 2020, seeking class damages and an injunction against Defendants from continuing to deliver solicitous texts to Plaintiff and members of his class for at least 30 days.

Through his complaint, Plaintiff alleged that Defendants violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") by delivering dozens of advertising

or marketing messages to a cellular telephone number registered with the National DNC without prior express consent. [DE 17 at 2]. Plaintiff alleged that these were non-emergency communications meant to promote Defendants' goods and services. [DE 17 at 2]. Plaintiff also alleged that he is the representative of the following class:

> All persons throughout the United States (1) to whom Deliver Technology, LLC or Fluent, Inc. delivered, or caused to be delivered, more than one telephone call or text message within a 12-month period, promoting Deliver Technology, LLC's or Fluent, Inc.'s goods or services, (2) where the person's residential or cellular telephone number had been registered with the National Do Not Call Registry for at least thirty days before Deliver Technology, LLC or Fluent, Inc. delivered, or caused to be delivered, at least two of the telephone calls or text messages within the 12-month period, (3) within four years preceding the date of this complaint through the date of class certification.

[DE 1 at 14–15].

Plaintiff served his discovery requests to Defendants on August 21, 2020. After receiving Defendants' responses and objections to his first set of discovery requests on September 21, 2020, Plaintiff sent Defendants a Rule 37 conferral letter on October 8, 2020, identifying certain deficiencies and inconsistencies in Defendants' discovery responses. [DE 17–5 at 2–8]. Plaintiff followed up with Defendants multiple times between October 22, 2020 and December 1, 2020 via email and telephone but did not receive a response from them. [DE 17–6 at 1–2].

On November 22, 2020, Plaintiff filed an amended complaint alleging that, after he repeatedly instructed Defendants to stop and filed the instant class action lawsuit, Defendants continued to send him solicitous text messages. [DE 14 at 10–12]. Plaintiff also claimed to be the representative of an additional class: those who were members of

the class listed in his original complaint but who had also received text messages by or on behalf of Defendants "after [instructing them] not to send messages to the person's telephone number." [DE 14 at 12].

On December 11, 2020, Plaintiff filed the instant motion to compel discovery responses. Plaintiff asserts that Defendants had not produced documents in response to Plaintiffs' Requests for Production, that Defendants provided incomplete answers to Interrogatories 1, 6, 7, and 8 and did not substantively respond to Interrogatories 2–5 or 9–19, and that Defendants' responses to Plaintiff's requests for admissions are composed of invalid objections and reflect a lack of good faith. [DE 17 at 3–4]. On December 18, 2020, Defendants filed their answer to Plaintiff's amended complaint.

Defendants then filed Supplemental Responses and Objections to Plaintiff's discovery requests on January 15, 2021. [DE 22-1 at 21, 26, 39]. On the same day, Defendants filed a response to Plaintiff's motion to compel, asserting that they made a good faith effort to address the issues Plaintiff identified in their initial responses and have thus mooted any dispute. [DE 22 at 3]. Additionally, Defendants objected to all requests for data pertaining to text messages sent by them, claiming that messages sent to Plaintiff and the putative class members were sent by third parties. [DE 22 at 2, 9 n.2]. Defendants also assert that Request for Production Nos. 5, 15, & 23 and Interrogatory No. 5 are irrelevant to the claim at issue. [DE 22 at 5]. Additionally, Defendant claims that Requests for Production Nos. 7-14, 26-27, & 33-34 and Interrogatories 2-3, 9-13, & 14-15 are overbroad and seek irrelevant information. [DE 22 at 7].

On January 22, 2021, Plaintiff filed a reply in support of his motion to compel. Plaintiff acknowledged that Defendant produced some responses but asserts that these responses are incomplete and do not constitute a good faith effort to answer discovery requests. [DE 24 at 1]. Plaintiff asserts that Defendants' inadequate responses do not moot Plaintiff's motion and requests that the Court order Defendants to respond to the disputed discovery items.

## II.   ANALYSIS

### A.   Legal Standard

#### 1.   Motion to Compel

A party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). When an opposing party has failed to respond to discovery requests or has provided evasive or incomplete responses to requests, a party may file a motion to compel. Fed. R. Civ. P. 37(a) When addressing motions to compel filed under Fed. R. Civ. P. 37(a), the court has broad discretion and may deny discovery to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. *See* Fed. R. Civ. P. 26(c); *Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1171 (7th Cir. 1998); *Gile v. United Airlines, Inc.*, 95 F.3d 492, 495–96 (7th Cir. 1996). "[A] district court should independently determine the proper course of discovery based upon the arguments of the parties." *Gile*, 95 F.3d at 496.

In discovery, what is relevant includes more than what is admissible at trial. Instead, relevant matter includes "anything that appears reasonably calculated to lead

the discovery of admissible evidence." *Barker v. Life Ins. Co. of N.Am.*, 265 F.R.D. 389, 393 (S.D. Ind. 2009) (internal citation omitted). Given the liberal scope of discovery under Fed. R. Civ. P. 26(b), "[t]he burden rests upon the objecting party to show why a particular discovery request is improper." *Gingerich v. City of Elkhart Prob. Dep't*, 273, F.R.D. 532, 536 (N.D. Ind. 2011) (internal citations omitted). Nevertheless, "the proponent of a motion to compel discovery still bears the initial burden of proving that the information sought is relevant." *United States v. Lake County Bd. of Comm'rs*, No. 2:04 CV 415, 2006 WL 978882, at *1 (N.D. Ind. Apr. 7, 2006) (internal quotation omitted); *see also United States v. Farley*, 11 F.3d 1385, 1390 (7th Cir. 1993) ("Since the documents at issue are not relevant to the controversy before us, Farley cannot, as a matter of law, make a showing of need."); *Greenbank v. Great Am. Assurance Co.*, No. 3:18-cv-00239-SEB-MPB 2019 WL 6522885, at *3 (S.D. Ind. Dec. 4, 2019) ("A party moving to compel production carries the initial burden of establishing, with specificity, that the requested documents are relevant." (emphasis in original)).

If a party does choose to file a motion to compel, the filing party "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Under this Court's Local Rules, such certification must be filed separately and include specific information including "the date, time, and place of any conference or attempted conference; and the names of the parties participating in the conference." N.D. Ind. L.R. 37-1(a)(1)–(2). "The court may deny any [discovery-related] motion . . . if the required certification is not filed." N.D. Ind. L.R.

6

37-1(b). Local Rule 7-1(b)(2) also requires parties to file a supporting brief with any Rule 37 motion it files.

Here, the parties disagree as to whether Defendants have complied with their discovery obligations. [DE 24 at 1]. Moreover, Plaintiff contends that Defendants recite general objections throughout their responses and inappropriately object to Plaintiff's requests regarding information that is relevant both to Plaintiff's individual claims as well as information that is vital to the certification of Plaintiff's proposed classes. Plaintiff contends that Defendants' approach to discovery amounts to an effective filibuster of this litigation. [DE 17 at 1]. Defendants, on the other hand, assert that they have supplemented a significant amount of their discovery responses, that their remaining objections to Plaintiff's requests are valid, that Plaintiff's requests were overbroad, and that they did not send text messages to Plaintiff themselves. [DE 22 at 2]. Although Plaintiff made a good faith attempt to address many of these disputes through their multiple requests to meet-and-confer with Defendants pursuant to the Federal Rules of Civil Procedure as well as this Court's Local Rules, Defendants refused to respond to Plaintiff. Thus, these disputes remain unresolved. Fed. R. Civ. P. 37(a)(1); N.D. Ind. L.R. 37-1(a)(1)–(2). Each discovery dispute will be addressed in turn.

### 2.    47 U.S.C. § 227(c)

Section 227(c) of Title 47 of the United States Code directs the Federal Communications Commission ("FCC") to set forth regulations meant to establish and enforce a national DNC database of individuals who object to receiving telephonic solicitations. Pursuant to this direction, the FCC implemented regulations making it

unlawful for an entity to telephonically solicit a telephone number listed on the national

DNC. 47 C.F.R. § 64.1200(c). Section 227(c) also grants a private right of action to an

individual who has received "more than one telephone call within any 12-month period

by or on behalf of the same entity in violation of the regulations prescribed under [47

U.S.C. § 227(c)]." 47 U.S.C. § 227(c)(5). The purpose of this subsection is to "protect

residential telephone subscribers' privacy right to avoid receiving telephone

solicitations to which they object." 47 U.S.C. § 227(c)(1). The term "telephone

solicitation" is defined in both the statute and the regulation as "the initiation of a

telephone call or message for the purpose of encouraging the purchase or rental of, or

investment in, property, goods, or services, which is transmitted to any person," but

does not include a call or message made "to any person with that person's prior express

invitation or permission." 47 USC § 227(a)(4); 47 C.F.R. § 64.1200(f)(15)(i).

### B.   Discussion

#### 1.   Defendants' General Objections

Plaintiff argues Defendants' responses to both his Interrogatories and Requests

for Production are incomplete. [DE 24 at 4]. Specifically, Plaintiff claims that Defendants

incorporate pages of either general or more specific objections into each of their

supplemental discovery responses and respond subject to these objections. [*Id.*].

Plaintiff asserts that this renders Defendants' responses incomplete and unclear.

When a party objects to an interrogatory, that objection must be stated with

specificity. Fed. R. Civ. P. 33(b)(4). Additionally, when objecting to a production

request, the objecting party must "state with specificity the grounds for objecting to the

request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). Thus, general objections that recite boilerplate language without explanation of how they apply to specific discovery requests do not meet this burden. *See Barker v. Kapsch Trafficcom USA, Inc.*, No. 1:19-cv-00987-TWP-MJD, 2019 WL 8301693, at *2 (S.D. Ind. Aug. 30, 2019). Accordingly, the Seventh Circuit routinely overrules these types of objections. [*Id.*]

Here, Defendants incorporate multiple pages of general objections as well as various individual boilerplate objections into their responses to Plaintiff's Interrogatories and Requests for Production. Defendants listed fourteen general objections in their initial response to Plaintiff's Requests for Production and thirteen general objections in their initial response to Plaintiff's Interrogatories. [DE 17-2 at 3–5; DE 17-3 at 3–4]. Defendants also incorporated these general objections into every supplemental response and objection to Plaintiff's discovery requests as well. [DE 22-1 at 2; DE 22-1 at 27].

Yet Defendants' general objections do not state specific grounds for the objections as required by Rules 33 and 34. Defendants' general objections lack any assertion as to why they are appropriate responses to Plaintiff's discovery requests and fail to identify which general objections are applicable to which discovery requests. "[G]eneral objections made without elaboration, whether placed in a separate section or repeated by rote in response to each requested category, are not 'objections' at all—and will not be considered." *Novelty, Inc. v. Mt. View Mktg.*, 265 F.R.D. 370, 375 (S.D. Ind. 2009); *see also, e.g.*, *Beverly v. Depuy Orthopaedics, Inc.*, No. 3:07-CV-137 AS, 2008 WL 45357, at *5 (N.D. Ind. Jan. 8, 2008) (compelling discovery in part because the defendant

failed to explain why given objections applied to any discovery request and failed to identify which discovery requests the general objections targeted).

Defendants also incorporated other general objections, which Plaintiff labels as "specific boilerplate objections," into their discovery responses. For example, in multiple responses, Defendants object to certain interrogatories as requesting information that Plaintiff already possesses or is in a third party's possession but without any argument or evidence to support their assertion. [DE 22-1 at 5, 6, 7]. Yet, Plaintiff has not specified in his briefing on the instant Motion which of Defendants' specific boilerplate objections he finds incomplete, unclear, or otherwise improper. And this Court will not scour the record to locate evidence of Plaintiff's concerns. *Alexander v. City of South Bend,* 433 F.3d 550, 556 (7th Cir. 2006). Indeed, this Court is not a "pig[] hunting for truffles buried in briefs" or "archaeologists" searching the record to identify issues or evidence for any party. *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991); *DeSilva v. DiLeonardi*, 181 F.3d 865, 867 (7th Cir. 1999).

Thus, the Court finds that while Defendants' general objections to Plaintiff's Requests for Production and Interrogatories lack the specificity required under Rule 33 and 34, Plaintiff has not adequately identified or supported his concerns about Defendants' objections through the instant Motion. Unable to discern the full scope of the parties' dispute over general objections, the Court cannot reach any conclusion as to the ultimate propriety of Defendants' general objections. Therefore, the Court must deny Plaintiff's Motion as to these objections. If the parties cannot resolve this dispute through additional meet and confer efforts, the Court will entertain a renewed motion

to compel in compliance with the case management deadlines set forth in the governing Rule 16(b) Scheduling Order [DE 13, DE 28, DE 33] and the objection standards of Fed. R. Civ. P. 33 and 34.

### 2.     ROGs 4, 18 & 19, and RFP 4 & 18

Through Request for Production No. 18 and Interrogatory No 18, Plaintiff seeks information relating to Defendants' policies preventing and addressing the delivery of text messages to wrong numbers, numbers on the DNC, or to individuals who ask them to stop sending text messages. ROGs 4 and 19 and RFP 4 request information regarding communications between Defendants and Plaintiff. In their supplemental responses, Defendants stated that they did not deliver any text messages to Plaintiff themselves, that they do not have records noting instances of misdelivery of text messages, and that the requested information is irrelevant to the claim at issue. On these grounds, Defendants did not produce the requested information. [DE 22-1 at 4, 12, 29, 36, 37]. Plaintiff, however, contends that based on other evidence produced by Defendants, these responses are incomplete and "simply false." [DE 24 at 4–5]. Thus, Plaintiff asks the Court to compel complete responses to ROGs 4, 18–19 and RFPs 4 & 18.

A court "cannot compel a party to produce something that does not exist." *Sowell v. Dominguez*, No. 2:09-cv-0047, 2013 WL 5913806 (N.D. Ind. Oct. 30, 2013) (citing *Hagemeyer N. Am., Inc. v. Gateway Data Scis. Corp.*, 222 F.R.D. 594, 598 (E.D. Wis. 2004)); *see also Norman v. Young*, 422 F.2d 470 (10th Cir. 1970). A producing party's response is therefore complete if it states that the requested information does not exist. *Hagemeyer*

*N. Am., Inc.*, 222 F.R.D. at 598 (citing 8A Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 2213 (2d ed. 1994)).

Here, Defendants maintain that information and documents responsive to Plaintiff's ROGs 4, 18–19 and RFP 4 do not exist. In their supplemental discovery responses dated January 15, 2021, Defendants explain that they did not contact Plaintiff directly and do not maintain notes regarding the misdelivery of text messages. [DE 22-1 at 4, 12, 29, 30, 37]. Thus, Defendants have stated that the requested information does not exist leaving nothing for the Court to compel in response to these requests. *See Hagemeyer N. Am., Inc.*, 222 F.R.D. at 598.

If, however, the requested information does exist, it would be directly relevant to Plaintiff's claim under Section 227(c) of the TCPA. The information requested in ROGs 4 & 19 and RFP 4 would bear directly on whether Defendants violated Section 227(c) by directing more than one telephonic communication at Plaintiff within a 12-month period despite his participation in the DNC registry. Additionally, ROG 18 and RFP 18 would be relevant to the Section 227(c) affirmative defense for establishing practices and procedures to prevent telephonic solicitations in violation of the regulations prescribed in the statute. *See* 47 U.S.C. § 277(c)(5)(C). However, Defendants have not asserted that the information requested in RFP 18 does not exist and have not objected to it with specificity. Thus, Plaintiff is entitled to complete responses to RFP 18, which Defendants must produce promptly.

### 3.      ROG 5 and RFP 5, 15, & 23

Through ROG 5 and RFPs 5, 15, & 23, Plaintiff seeks information regarding

Defendants' dialing system and consent practices. Defendants, however, objected to

these requests on the grounds that the requested information is out of the scope of

discovery as it does not bear on the elements of a claim brought under 42 U.S.C. § 227(c)

and, thus, is not pertinent to this case. In support, Defendants rely upon the two distinct

causes of action under the TCPA: one in Section 227(b) and the other in Section 227(c).

Section 227(b) makes it illegal for an individual to call or text another

individual's cell phone via an ATDS without the recipient's prior express consent. 47

U.S.C. § 227(b)(1). Plaintiff's complaint, however, only raises a claim under Section

227(c), which makes it illegal for the same entity to send more than one call or text to a

telephone number listed in the DNC list within a 12-month period. [DE 1 at 1, 13 (citing

47 U.S.C. § 227(c)(5))]. According to Defendants, ROG 5 and RFPs 5, 15, & 23 seek

information that would only be relevant to a claim brought under Section 227(b) and, as

such, is irrelevant for the purposes of this case. [DE 22 at 6]. Specifically, Defendants

argue that, because a claim under Section 227(c) is made by claiming that an individual

received multiple messages from the same entity in a twelve-month period, that the

way that those text messages were sent is irrelevant to the elements of a claim brought

under 227(c). [DE 22 at 7]. Yet Defendants' argument here is conclusory.

The elements of a claim brought under Section 227(b) are clearly different than

the elements of a Section 227(c) claim. However, claims made under both sections relate

to the type and frequency of unwanted solicitous telephonic communications made to

13

individuals and some evidence relevant to both types of claims may overlap. Further, the systems and consent practices involved in the sending of text messages at issue in ROG 5 and RFPs 5, 15, & 23 are relevant to Plaintiff's Section 227(c) claim. Defendants have not rebutted Plaintiff's assertions of relevance in both his October 2020 Rule 37 conferral letter and his reply brief in support of the instant Motion to Compel.

Moreover, Plaintiff has shown that the requested information is relevant to the statutory TCPA affirmative defense available if "the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under [subsection (c)]." 47 U.S.C. § 227(c)(5)(C). Establishing this affirmative defense involves an evaluation of any practice Defendants employed to send text messages themselves or to direct others to send text messages. Thus, the functionality of any system, as well as the consent practices involved in the operation of that system, used to deliver, or caused to be delivered, text messages to Plaintiff bears on whether Defendants are precluded from liability. Accordingly, Defendants' objections are overruled, and Plaintiff is entitled to substantive answers regarding ROGs 5 and RFPs 5, 15, & 23.

### 4.   RFPs 26 & 27

In response to RFPs 26 and 27, Defendants objected to Plaintiff's requests for information regarding their business structure and relationships as they relate to the sending of text messages on grounds that their business structure is unrelated to Plaintiff's claims. [DE 17-2 at 21; DE 22 at 9]. Defendants also assert that RFPs 26 and 27 are overbroad. [DE 22 at 8].

To start, Defendants have not demonstrated with the requisite specificity why Plaintiff's requests for information about their business structure and relationships regarding the sending of text messages is improper here. *See Gingerich*, 273 F.R.D. at 536. As Plaintiff explains, Defendants' business operations are relevant to this case especially because they maintain that the text messages to Plaintiff were sent by a third party. [DE 22 at 9 n.2]. Indeed, Section 227(c) authorizes TCPA claims by individuals who received solicitous text messages "within any 12-month period *by or on behalf of* the same entity." 47 U.S.C. § 227(c)(5) (emphasis added). Thus, the requested business operations information is relevant to the extent it identifies the party or parties physically sending the text messages at issue and Defendants' role in directing the text messages regardless of who actually sent them. More specifically, the requested business information could be especially relevant in this case because Fluent contracted to use the two short codes through which Plaintiff received the unwanted text messages. [DE 24-1 at 2].

With that said, RFPs 26 and 27 are still overbroad. Request for Production No. 26 requests production of documents and electronically stored information regarding the relationship between defendants as it "pertains to the sending of text messages." [DE 17-1 at 7]. RFP 26 does not limit the scope of the requested text messages in any way even though Plaintiff's Section 227(c) claim only concerns a specific type of text message sent to a specific type of person. As written, RFP 26 demands production of information pertaining to text messages beyond the scope of this case and other irrelevant aspects of the business relationship between Defendants Deliver and Fluent.

The language of RFP 27, on the other hand, limits production of information regarding Defendants' related business relationships to the more specific categories of "advertising" and "telemarketing" text messages. While these categories of text messages seem appropriate as to both RFP 26 and 27, Defendants contend that RFP 27 is overbroad because it does not define the terms "advertising" and "telemarketing." [DE 22 at 8]. Defendants are correct that RFP 27 does not define "advertising" or "telemarketing." However, Defendants have merely announced that the terms are overbroad without developing any further argument. Thus, Defendants' objection is so vague as to be meaningless. In fact, Defendant has arguably waived the overbreadth argument as to the terms in RFP 27 by failing to develop the argument. *See United States v. Parkhurst*, 865 F.3d 509, 524 (7th Cir. 2017).

Thus, Defendants must now produce information responsive to RFPs 26 and 27 but limited to "advertising" and "telemarketing" text messages. Without further argument from Defendants, those terms speak for themselves. To the extent Defendants require clarification, they shall meet and confer with Plaintiff—an opportunity Defendants did not take before this Motion was filed despite Plaintiff's multiple attempts. Any disputes remaining after a good faith resolution effort may be addressed to the Court via motion within the confines of the Federal Rules, the Local Rules, and the Court's Scheduling Order, as amended.

### 5.    Class Related Data

Throughout their filings, Plaintiff does not specify which discovery items he considers to make up his category of "class related requests." Plaintiff does, however,

only reference the items of ROGs 9–15 and RFPs 7–14 & 33 when discussing his disputes with Defendants' responses to class related data. [DE 17 at 12; DE 24 at 9]. Without more, the Court can only assume that the parties' disputes relating to class related data only pertain to these identified discovery requests.

Through his discovery requests, Plaintiff seeks data regarding the text messages at issue and those delivered to putative class members as well as to the identities of their recipients. [DE 24 at 8]. Specifically, through ROGs 9–15 and RFPs 7–14, Plaintiff requests information quantifying the telephone numbers or individuals to which Defendants sent or caused to be sent text messages and identifying those individuals. [DE 22-1 at 5–7, 32–35]. Plaintiff also asks for information regarding the number of people or telephone numbers that fit the class definition listed in his original complaint, text messages delivered to them that were sent to them. [DE 24 at 9]. According to Plaintiff, this information is relevant to the commonality, numerosity, typicality, and predominance requirements of Rule 23 and is routinely produced in TCPA class litigation. [DE 17 at 12]. Through RFP 33, Plaintiff requests documents evidencing the written consent from putative class members to send them text messages, which Defendants contend they received, for comparison to the broader set of individuals who received solicitous text messages so he can determine who was contacted without consent. [DE 17 at 9–10].

Defendants, however, object to these requests as irrelevant and unduly burdensome. [DE 22 at 7, 10]. More specifically, Defendants contend that RFPs 7–12 and ROGs 9–13 are facially overbroad because they seek information regarding text

17

messages Defendants sent directly to individuals and they did not themselves send any of the solicitous text messages to Plaintiff or any putative class members. [DE 22 at 7]. Defendants also contend that RFPs 7–14 and ROGs 9–15 seek information relating to text messages sent to such a broad of a category of people that responsive information would include irrelevant information regarding text messages sent to individuals other than Plaintiff or the putative class members. [DE 22 at 8]. And lastly, Defendants argue that production of class related information sought through RFPs 13, 14, & 33 and ROGs 14 & 15 would require an unduly burdensome "Herculean effort." [DE 22 at 10].

### i.      Relevance of ROGs 9–15 and RFPs 7–14

Considering Rule 23's threshold requirements of numerosity, commonality, and adequacy, precertification discovery is appropriate to determine whether a class can be properly certified, and discovery should be sufficiently broad to allow Plaintiff a chance to meet these requirements. *Deslandes v. McDonald's USA, LLC*, No. 1:17-cv-04857, 2019 224137, at *3 (N.D. Ill. Jul. 17, 2019) (citing *Miner v. Gov't Payment Serv., Inc.*, No. 14-cv-7474, 2017 WL 3909508, at *3 (N.D. Ill. Sept. 5, 2017). Here, Defendants have not demonstrated that the class related information is irrelevant to Plaintiff's claim.

First, Defendants read RFPs 7–12 and ROGs 9–13 too narrowly when refusing to produce information regarding text messages sent by Defendants. Careful review of the language in RFPs 7–12 and ROGs 9–13 reveals that Plaintiff is not only requesting information regarding text messages sent directly by Defendants. [DE 17-2 at 9–13; DE 17-3 at 9–11]. Plaintiff clearly asks for information regarding text messages that Defendants "sent or *caused to be sent*," which is clearly relevant to his Section 227(c)

claim. [DE 17-2 at 9–13; DE 17-3 at 9–11] (emphasis added). Moreover, although Defendants have claimed that they did not send text messages to Plaintiff directly, discovery pertaining to whether they did in fact send solicitous text messages to Plaintiff or members of the putative class would bear directly on Plaintiff's claim. Thus, the fact that Plaintiff requests information regarding text messages sent directly to Plaintiff or members of the putative class does not, as Defendants suggest, render these discovery requests facially overbroad.

Second, the scope of class related information Plaintiff seeks in RFPs 7–14 and ROGs 9–15 is relevant even though it will likely include information regarding individuals who do not have a Section 227(c) TCPA claim. At their narrowest, Plaintiff's requests refer to documents relating to individuals who received text messages similar to those received by Plaintiff within a 12-month period. [DE 17-2 at 10–11]. These requests would necessarily encompass information identifying individuals who had given prior consent to receive solicitous text messages from Defendants. Such individuals would not have a right of action under Section 227(c) because they would not have received a "telephonic solicitation" under the statute. *See* 47 USC § 227(a)(4); 47 C.F.R. § 64.1200(f)(15)(i).

Nevertheless, courts in class-action TCPA cases have consistently held that information regarding plaintiffs and putative class members who were called by a defendant or by others on a defendant's behalf, such as outbound call lists and the number of calls made to those recipients, are relevant to the numerosity and commonality requirements listed in Rule 23. *Gebka v. Allstate Corp.*, No: 19-cv-06662,

2021 WL 825612, at *19 (N.D. Ill. Mar 4, 2021); *Thrasher v. CMRE Fin. Servs.*, No. 14-1540, 2015 WL 1138469, at *2 (S.D. Cal. Mar. 13, 2015); *see also, e.g., Doherty v. Comenity Capital Bank & Comenity Bank*, No. 16CV1321-H-BGS, 2017 WL 1885677, at *4 (S.D. Cal. May 9, 2017); *Medina v. Enhanced Recovery Co., LLC*, No. 15-14342-CIV, 2017 WL 5196093, at *3–4 (S.D. Fla. Nov. 9, 2017); *Gossett v. CMRE Fin. Servs.*, 142 F. Supp. 3d 1083, 1087 (S.D. Cal. 2015). Although the requested information here is not precisely a call list, the "pertinent question is . . . whether the documents contain information that 'bears relevant on the issue of class certification'." *Gebka*, No: 19-cv-06662, at *19 (citing *Knutson v. Schwan's Home Serv.*, No. 12cv964-GPC (DHB), 2013 WL 3746118, at *4 (S.D. Cal. July 15, 2013). Thus, the requested text-related information is relevant to class certification in a way that is analogous the relevance of call logs in other TCPA class actions. Moreover, text messages are analogous to phone calls in other TCPA cases such that the text data requested through RFPs 7–14 and ROGs 9–15 is relevant to the Rule 23 numerosity and commonality requirements for class certification applicable in this case.

### ii.      Burden of Producing RFPs 13, 14, & 33 and ROGs 14 & 15

Although relevance takes on a very broad meaning in the context of discovery, it does not automatically translate into discoverability when addressing motions to compel. *Motorola Sols., Inc. v. Hytera Communs. Corp*, 365 F. Supp. 3d 916, 924–25 (N.D. Ill. 2019). Discovery requests must also be proportional to the needs of the case regardless of relevance. *See* Fed. R. Civ. P. 26(b)(1). Proportionality is determined by considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources,

the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *See Williams v. Angie's List, Inc.*, No. 1:16-cv-00878-WTL-MJD, 2017 WL 1318419, at *14 (S.D. Ind. Apr. 10, 2017). With the burden to demonstrate why a discovery request is improper, the objecting party must show the point at which the burden of producing the discovery outweighs its benefit. *See Flomo v. Bridgestone Ams. Holding, Inc.*, No. 1:06-cv-00627-DFH-JMA, 2009 WL 1456736, at *8 (S.D. Ind. May 20 2009). Defendants have not met that burden here.

Defendants simply present conclusory assertions that the burden of producing information responsive to RFPs 13, 14 & 33 and ROGs 14 & 15 would completely outweigh any benefit to Plaintiff without any explanation of the nature of the burden of production or any comparison to the benefit to Plaintiff. [DE 22 at 10]. The benefit of the production of the information sought through RFPs 13 & 14 and ROGs 14 & 15 is demonstrated by the fact that it is relevant to the Rule 23 class action certification requirements. *See Gebka*, No: 19-cv-06662, at *6–7; *Medina*, No. 15-14342-CIV, at *6–7. Additionally, the production of the discovery sought in RFP 33 would be beneficial insofar at it is relevant Defendants' affirmative defense that they had received consent to contact Plaintiff and members of the putative class. [DE 18 at 24]. As Defendants have not met their burden of showing the point at which the burden of producing this discovery outweighs its benefit, Defendants' objections are overruled.

For the foregoing reasons, Plaintiff is entitled to the class related data he seeks through RFPs 7–14 & 33, and ROGs 9–15.

### 6.   ROGs 2 & 3

Through ROGs 2 & 3 Plaintiff requests information regarding entities who participated in the sending of the relevant text messages. Defendant, however, suggests that these requests are overly broad, and that the production of this information would be unduly burdensome. Defendants are concerned that the term "participation" is not sufficiently defined in ROGs 2 & 3 rendering the requests overbroad. Defendants argue that ROGs 2 & 3, as written, demand data that is irrelevant to Plaintiff's TCPA claim and would entail a wide variety of information that would not be manageable to produce. [DE 22 at 9; DE 22-1 at 28-29]. Yet Defendants have not outlined the extent to which the burden of the production of this information would outweigh its benefit. *See Flomo*, No. 1:06-cv-00627-DFH-JMA, at *8. More importantly, Defendants did not respond to Plaintiff's attempts to meet and confer regarding the discovery disputes. Thus, Defendants cannot cry "foul" now when they made no effort to understand Plaintiff's intended scope of the term "participation" before being forced to respond to the instant Motion to Compel. Accordingly, Defendants' objections to producing information regarding entities who participated in the sending of the relevant text messages sought through ROGs 2 & 3 are overruled. The parties shall confer about the definition of the term "participate" for the purposes of Defendants' production responsive to ROGs 2 & 3.

### III.   CONCLUSION

For the reasons discussed above, the court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion to Compel [DE 17]. Consistent with this Opinion and Order,

the parties are **ORDERED** to confer to discuss Defendants' specific objections to discovery requests. Defendants are also **ORDERED** to

- produce information responsive to RFPs 5, 7–15, 18, 23, 26–27 & 33 and ROGs 2–3, 5, 9–15 *instanter* but no later than **August 31, 2021**; and

- Meet and confer to discuss any remaining lack of clarity as to RFPs 26 & 27 and ROGs 2 & 3, to the extent necessary, before producing information responsive to these discovery requests.

After good faith meet and confer efforts by all relevant parties, additional Rule 37 motions will be entertained, only as needed, consistent with the terms of this Opinion and Order. Notably, Defendants' production in response to ROGs 4, 18–19 and RFP 4 is complete.

Lastly, the parties are **REMINDED** that supplementation of all discovery responses is due every six week until trial pursuant to Fed. R. Civ. P. 26(e) and this Court's Rule 16(b) Scheduling Order [DE 13 at 2].

**SO ORDERED** this 2nd day of August 2021.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge